**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARTANEZE JOHNSON, JAMES HANNAH AND WALTER CHERRY, on behalf of themselves, and all other plaintiffs similarly situated, known and unknown,<br>Plaintiffs,<br>v.<br>BOSMAN TRUCKING, INC., AN ILLINOIS CORPORATION AND GREG TLUSTOCHOWICZ, INDIVIDUALLY<br>Defendants. | No. 1:19-cv-02066<br><br>**The Honorable John F. Kness<br>District Court Judge**<br><br>The Honorable Maria Valdez<br>Magistrate Judge |

**PLAINTIFFS' AMENDED MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23**

**I.   Introduction and Background Facts**

On March 26, 2019, Plaintiffs Martaneze Johnson, James Hannah and Walter Cherry (the "Named Plaintiffs") filed their claims for back wages and other relief against Defendants Bosman Trucking, Inc. and Greg Tlustochowicz (together "Bosman" or "Defendants"), stating claims under the Fair Labor Standards Act ("FLSA"), Illinois Minimum Wage Law ("IMWL") and the Chicago Minimum Wage Ordinance ("CMWO") . Dkt. 1. On May 7, 2019, Plaintiffs filed their First Amended Complaint. Dkt. 6.

This case, filed in 2019, has developed through discovery and numerous other procedural steps. On November 26, 2019, Plaintiffs moved for Stage-One Conditional Certification and Notice to Putative Class Members pursuant to 29 U.S.C. §216(b), Dkt. 38-39. Plaintiffs' motion, which was unopposed by Defendants, was granted by Hon. Robert W. Gettleman. Dkt. 42. As a result, dozens of putative class members opted into the case.

On July 9, 2020, Plaintiffs moved to Consolidate and Reassign the instant matter, *Johnson v. Bosman Trucking, Inc.*, *et al*, with another parallel case, *Stingley v. Bosman Transport, Inc.*, *et al*. On December 1, 2020, following contested briefing by the Parties, this Court granted Plaintiffs' Motion to Consolidate and reassigned this matter to this Court's calendar from Judge Gettleman.

1

As a result of the consolidation of the *Stingley* and *Johnson* matters, a near-identical (also "Amended") Motion for Class Certification Pursuant to Fed. R. Civ. P. 23 has been filed concurrently herewith on behalf of the *Stingley* Plaintiffs.[1]

Thereafter, on January 11, 2022, Plaintiffs filed their Unopposed Motion For Class Certification and Memorandum of Law in Support. Dkt. 138/139. On May 9, 2022, this Court denied (without prejudice) Plaintiffs' Motion For R.23 Certification. See Dkt. 157. This Court ruled that Plaintiffs':

> "unopposed motion and proposed order lack the requisite information for the Court to determine whether the factors set forth in Rule 23 actually are met. See Fed. R. Civ. P. 23. Plaintiffs recognize in their memorandum in support of class certification [139] the various factors required to satisfy Rule 23, but fail to develop sufficiently those factors. (Dkt. 139 at 9-17.) Accordingly, Plaintiffs unopposed motion for class certification under Rule 23 of the Federal Rules of Civil Procedure [138] is denied without prejudice. Plaintiffs may, on or before 5/23/2022, resubmit a motion for class certification, along with a draft order that fully complies with the requirements of Rule 23. See, e.g., Stone et al. v. Signode Indus. Grp., LLC, 17-cv-05360, Dkt. 198 (March 25, 2022) (order certifying class). In addition, the submitted draft order states that it is only "preliminarily" approving class certification. That requested half-measure, however, is puzzling: unlike preliminary approval of a class action settlement (a technique that this judge and others have employed), it is not clear what legal authority permits the Court to grant preliminary certification of a class. Nor is the purpose of preliminary certification readily apparent either. If preliminary certification is indeed what Plaintiffs (or the parties together) seek, Plaintiffs must provide relevant Seventh Circuit case law explaining from where such authority springs (as it is not discussed in either Rule 23 or in Plaintiffs' memorandum in support of the motion for class certification (see Dkt. [139])). In the alternative, Plaintiffs are welcome to clarify that they are seeking final class certification and to resubmit an appropriately revised draft order.

On May 24 (Dkt. 161), the Court granted Plaintiffs' Unopposed Motion For Extension of time to file an amended motion, up to an including June 6, 2022.

Here, Plaintiffs seek to more fully develop the factual elements present in this case that supports Rule 23 Certification so as to address the Court's concern. In doing so, Plaintiffs

---

[1] The one and only difference in the presentation of the Motions for Class Certification as between the two (2) consolidated cases is that in this case, all Drivers were treated as as 1099 independent contractors. In the related case (*Stingley v. Laci*), Drivers were at times also classified and paid by Laci as W2 employees. That nuance is also the only difference in the Stipulations reached by both sides and the only difference in the proposed Class definition(s).

2

also recognize their inaccurate reference to "preliminary certification" in the Motion and the proposed Order that was submitted, and here revise all materials in a manner that seeks from the Court "certification", without the inaccurate reference to "preliminary" certification.

    II.    **In Support of This Motion For R.23 Class Certification, Plaintiffs Rely Herein Primarily Upon the Parties Detailed Stipulation of Facts Concerning the Near Identical Facts and Law That Apply to All Plaintiff Drivers of the Proposed Subclasses**

As developed in more detail below, the Parties have cooperated in the development of a comprehensive set of Stipulations that have been filed with the Court (Dkt. 135) and are attached hereto as **Exhibit 1.** In summary, those stipulated facts establish that the day-to-day job duties of all Drivers were substantially identical. Unlike the consolidated *Stingley* case, here Defendant Bosman did not employ "spotter Drivers", only shuttle Drivers. And, unlike *Stingley*, Defendant Bosman classified all shuttle Drivers as 1099 independent contractors - no W2 employees. Thus, here, there is but one Class definition of Defendant's Shuttle Drivers, as discussed more thoroughly *infra*. However, as the Stipulations demonstrate, and as the evidence in Plaintiffs' Motion for Consolidation demonstrated, all other material aspects of the compensation policies and procedures as well as the day to day job duties of the Drivers, across both cases, are fundamentally identical.

All Plaintiffs herein ("Drivers")[2], performed duties as shuttle truck drivers for Defendants and during their entire employment, were tasked with transporting automobile component parts owned by Ford Motor Company ("Ford") from certain local "holding lots" owned or leased by Ford to Ford's Chicago Assembly Plant ("the CAP"). Plaintiffs routinely worked weeks in excess of forty hours. Plaintiffs were, for two (2) different contested reasons not relevant to this Motion, victims of common compensation practices that violate the FLSA, IMWL and CMWO.

Defendants admit that all hours worked, including hours over 40 in a week, were paid to

---

[2] Throughout this Memorandum, reference to "Plaintiffs" and "Drivers" includes the Named Plaintiffs, all opt-in Plaintiffs who have filed Consents via the previous Conditional Certification of the FLSA action, and all Putative Class Members to which this R.23 Class Certification Motion pertains.

3

the Drivers at straight time rates. Rather, Defendants offer two (2) defenses to the nonpayment of time and half rates for the work over forty hours. See Defendants' Affirmative Defenses, Dkt. 8. First, Defendants assert that Drivers qualified under the law as independent contractors and therefore are/were not entitled to overtime compensation. Additionally, Defendants failed to pay the required time and one-half rates based upon an asserted preemption by the Motor Carrier Act ("MCA"). While Plaintiffs do not here argue (because the legal standard does not require it) the merits of either the independent contractor defense or the MCA exemption, throughout the pertinent time frame Defendants continued to rely on one or both improper platforms as a basis for denial of Plaintiffs' rightful compensation.[3]

These pay practices, which denied and continue to deny Plaintiffs and other similarly situated Drivers their rightfully earned overtime pay, form the basis of Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23.

### A. Defendants' Business and Plaintiffs' Scope of Work

Defendant Bosman is a trucking service contractor company registered in Illinois that provides shuttle driving services to a single client, Ford Motor Company. Bosman maintains or maintained an office and conducts or conducted most, if not all, of its business, near the CAP facility at 12600 S. Torrence Avenue, Chicago, Illinois 60633. See Parties' Joint Stipulation of Facts (the "Stipulations"), ¶4, found at Dkt.135, and **Exhibit 1** hereto. See also more information about the Parties' Joint Stipulations, Section II(B), *infra*.

Bosman is a motor carrier that operates under the U.S. Federal Motor Carrier Safety Administration authority and licensing of B&W Cartage Company ("B&W"). See Stipulations, ¶3. Bosman's relationship with Ford and the services it provides filter through a series of other contractual relationships (*Id* at ¶¶19-20), none of which have any bearing upon the facts at issue

---

[3] All Named Plaintiffs are former employees of Bosman. However, the wage violations alleged herein have been continued throughout this litigation. Thus, references to time in this Memorandum are made interchangeably in the present and past tense.

4

in the case. Bosman has not asserted that any of its affiliated or sub-contracting relationships impacts its obligation to pay overtime, and Bosman's affirmative defenses are restricted to the independent contractor and MCA exemption described herein. The import is, as Plaintiffs allege, Bosman was, at all times, "the employer", and the Plaintiff Drivers were all providing identical Driver services.

The Named Plaintiffs were all shuttle Drivers for Bosman, as were members of the proposed Plaintiff Class. Each workday, Plaintiffs would arrive at Bosman's facility, proceed to their assigned truck-tractor (all of which were owned by Bosman) and begin moving trailers (owned by Ford or third-party auto part manufacturers or shippers) containing automobile component parts (owned by Ford) located at holdings lots (owned or leased by Ford) to the CAP for assembly of Ford vehicles. *Id*. at ¶¶21, 40. Drivers would locate, attach and "shuttle" trailers of auto parts based on instruction by third-party dispatchers (employed by B&W, CWS or other third-party contractors) acting at the direction of Ford's employees at the CAP. *Id*. at ¶¶29, 45. Once a Driver completed a trip to the CAP from a Ford holding lot with a trailer of Ford auto parts, the Driver would hook to and return an empty trailer, at times along with the empty parts "racks", back to one of the Ford holding lots. The Drivers would complete this same process several times per day. *Id*. at ¶¶17, 22.

The Plaintiff Drivers were paid only a straight time rate for each and every hour they worked, including those hours over 40 in individual work weeks. *Id*. at ¶38. See also Dkt. 8, Defendants' Answer to Plaintiffs' First Amended Complaint ("Defendants' Answer"), ¶¶5e-f, 6e-f, 7e-f.

### B. The Parties' Agreed Stipulation of Facts

Over the course of this litigation, the Parties have largely agreed as to the salient facts of this case, identifying for the most part the legal issues surrounding the application of Defendants' two (2) primary affirmative defenses: the asserted independent contractor classification and the

5

MCA exemption. As a result, the Parties worked diligently at stipulating to a lion's share of the facts relevant to both of those legal issues in order to set the stage for anticipated motion practice and cross motions for summary judgment.

The Parties' Joint Stipulation of Facts (the "Stipulations") filed with this Court provide Plaintiffs with all facts necessary to support each factor relevant to class certification under Fed. R. Civ. P. 23. See Dkt. 135 and **Exhibit 1**. The Stipulations confirm that Plaintiffs and the proposed Class consisting of other Drivers who performed identical duties, satisfy all prongs of Rule 23 mandates, including commonality, typicality, pre-dominance, and adequacy of representation. These Stipulations are binding upon Defendants for all case purposes, including this Motion for Class Certification. As Plaintiffs argue in support of Class Certification of their IMWL and CMWO claims, this Court need look no further than the Parties' Stipulations to conclude that the uncontested facts found in the Stipulations overwhelmingly support Class Certification.

The Parties' Stipulations provide an *uncontested and undisputed* confirmation that all other Drivers are not just similarly situated to the Named Plaintiffs, but identical. The Stipulations confirm that all Plaintiff Drivers "are shuttle truck drivers, or former shuttle truck drivers, for Defendant Bosman" and the "trailers containing out of state manufactured parts staged at Ford Lots are transported to the CAP, by Plaintiff shuttle truck drivers" from said Ford Lots. See Stipulations, ¶1, 16. All Plaintiffs and Drivers were "paid straight time for every hour they worked" based on "a fixed shift agreed upon between Bosman and the Plaintiff drivers." *Id*. at ¶¶38, 46. These facts apply equally to Plaintiffs and all Drivers within the putative class and constitute the foundation for class certification of the IMWL and CMWO claims.

    **C.**    **All Shuttle Drivers Were Denied Overtime Compensation for Hours Worked in Excess of 40 Hours in Individual Work Weeks**

        **i.**    **All Shuttle Drivers Within the Proposes Class Were Paid a Straight Time, Regular Hourly Rate for All Hours Worked and Bosman Acknowledges That Shuttle Drivers Were Not Paid Overtime Premiums for Hours Worked in Excess of 40 in Individual Work Weeks**

The pay practices of Bosman as applied to all Plaintiff Drivers are undisputed. All Drivers were shuttle Drivers who performed identical shuttle driving tasks for Bosman in conjunction with Bosman's services to Ford Motor Company. See Stipulations, ¶¶1, 17, 22. Plaintiffs allege they typically worked 12-hour shifts, five or six days per week. See Plaintiffs' First Amended Complaint, Dkt. 6, ¶¶5b, 6b, 7b. Plaintiffs did not receive any overtime premiums over the course of their employments with Bosman. See **Exhibit 2**, Defendants' Responses to Plaintiffs' Interrogatories No. 7; See also Stipulations, ¶38. Instead, all Drivers were "paid straight time for every hour they worked" based on "a fixed shift agreed upon between Bosman and the Plaintiff drivers." Stipulations at ¶¶38, 46. Bosman acknowledges, through their Responses to Interrogatories and the Stipulations, that Drivers were not paid any overtime premiums for hours worked in excess of 40 in individual work weeks and that only straight time rates were paid. In addition to Bosman's acknowledgments and admissions, Defendants' own records evidence calculations of each Plaintiff's weekly pay and further confirm Bosman's alleged improper pay practice. See **Exhibit 3**, Defendants' Payroll Samples for Named Plaintiffs.

      ii.      **Bosman Acknowledges All Shuttle Drivers Were Classified as Independent Contractors and Through Discovery Responses and Stipulations, Concede Facts Regarding this Arrangement**

As stated, *infra*, all Plaintiffs and Drivers were classified by Bosman as independent contractors for the entirety of their employment. See Stipulations at ¶39, Defendants' Responses to Interrogatories, No. 9, 12(a), Defendants' Answer, Dkt. 8, ¶13, 14. Bosman concedes all Plaintiffs and Drivers signed a written Independent Contractor Agreement. Stipulations at ¶39. Bosman also concedes all Drivers drove only vehicles owned by Bosman and that "[n]o Plaintiff driver provided his or her own truck in conjunction with the services rendered to Bosman as a shuttle driver". *Id*. at ¶40. Defendants concede that "shuttle truck driving services performed by Plaintiffs are/were services integral to Defendant's trucking business". *Id*. at ¶41. Defendants concede that "No Plaintiff shuttle truck driver was hired by Bosman Trucking, Inc. for special assignments or tasks." *Id*. at ¶42.

7

Defendants concede that no Plaintiff or Driver "participated in any other independent business organization, operation or venture while performing driving services for Bosman." *Id*. at ¶44. Bosman admits that Plaintiffs worked at the direction of its "management employees, as well as certain third-party dispatchers" that would "provide the Plaintiff shuttle drivers with instruction, direction and assignment of tasks" such that the "work performed for Bosman by each Plaintiff shuttle driver …was not work that could be performed at a time or date within any Plaintiff's sole discretion". *Id*. at ¶¶45, 46.

Although these Stipulations and admissions will be front and center of Plaintiffs' inevitable summary judgment arguments and primarily useful for that purpose, the Stipulations are offered here to cement the elementary notion that this group of shuttle Drivers are profoundly similar (indeed, identical) in every necessary aspect and properly positioned for Rule 23 Certification.

### III. Proposed Class Definition

Pursuant to the foregoing description of Plaintiffs' and other shuttle Drivers' receipt of only straight time wages for all hours worked in individual work weeks, Plaintiffs respectfully request the IMWL and CMWO class be certified under the provisions of Rule 23 as follows:

> All shuttle Drivers who work or worked for Defendants from March 26, 2019, to the date this Court enters an order certifying the Plaintiff class pursuant to Fed. R. Civ. P. 23, who were classified by Defendants as independent contractors, treated as exempt from overtime requirements because of the Motor Carrier Act exemption and were paid straight time wages for all hours worked in individual work weeks, including hours in excess of 40.

### IV. Argument

#### A. Merits Issues Are Not Considered at this Certification Stage of the Proceedings

As is well established, the sole issue now before the Court is whether certification of a class is proper under Fed. R. Civ. P. 23. Consideration of the underlying merits of the claim are not to be considered in regard to a request for class certification. See *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 835 (N.D. Ill. 2008). Courts across the Northern District of Illinois and the Seventh Circuit have consistently found that the merits of Plaintiffs' claims are not

8

being measured here at the certification stage, and the sole focus is whether Plaintiffs meet the class certification requirements of Rule 23. See again *Cicilline* at 835 ("…the Court does not delve into the merits of the ultimate issues in the case, which do not affect the question of class certification under Rule 23. See *Harris v. Circuit City Stores, Inc.,* 2008 WL 400862, at *3–4 (N.D.Ill. Feb.7, 2008); *Lau v. Arrow Fin. Servs., LLC,* 245 F.R.D. 620, 623 (N.D.Ill.2007); *Levie v. Sears Roebuck & Co.,* 496 F.Supp.2d 944, 946–47 (N.D.Ill.2007); *Hyderi v. Washington Mut. Bank, FA,* 235 F.R.D. 390, 395 (N.D.Ill.2006); *Cavin v. Home Loan Center, Inc.,* 236 F.R.D. 387, 395 (N.D.Ill.2006).". See also *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) ("…as a general principle, a court is not allowed to engage in analysis of the merits in order to determine whether a class action may be maintained."). While much of the evidence offered herein by Plaintiffs in support of Certification via Stipulations and Defendants' answers to written discovery will cross over in a substantive manner at the "proof" stages of the case, it is not incumbent for Plaintiffs to assert those "proof" facts here.

### B. The Rule 23 Standard

Rule 23 of the Federal Rules of Civil Procedure sets forth the standard and prerequisites for class certification. The plaintiff has the burden of demonstrating that he has satisfied the requirements of Fed. R. Civ. P. 23(a) and certification is proper under Rule 23(a). The burden is achieved if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are common questions of law and fact; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Furthermore, the plaintiff must meet one of the three requirements listed under Rule 23(b): (1) separate lawsuits would create the risk of inconsistent judgments or would be dispositive of the interests of non-party class members; or (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3)

9

questions of law or fact common to the class predominate over questions affecting individual members, and the class action is superior to other available methods. Fed. R. Civ. P. 23(b)(1) – (3).

### C. Class Certification of State and Municipal Wage Claims under Rule 23 is the Proper Procedure for Joinder of Those Claims, Even After Earlier Conditional Certification of FLSA Collective Action Pursuant to 29 U.S.C. §216(b)

This Court previously granted Plaintiffs' Motion for Stage-One Conditional Certification and Notice to the Putative Class Pursuant to 29 U.S.C. §216(b), which Bosman did not oppose. Dkt. 38-39, 42. Nevertheless, certification of IMWL and CMWO claims pursuant to Fed. R. Civ. P. 23 is proper for numerous reasons – primarily that class certification of state (and municipal) wage claims is the proper procedural method of joinder for such claims.

The primary difference between joinder under §216(b) and Fed. R. Civ. P. 23 is that class members must "opt-in" to an FLSA collective action while class members in a Rule 23 class action of state law claims are included in the class unless they opt out. See *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 976 (7th Cir. 2011) ("[s]ection 16(b) of the FLSA permits an employee to participate in a collective action only if that employee consents in writing to be a plaintiff in the action" while "potential members of a Rule 23(b)(3) class must be given only the opportunity to opt out of the class action; they will automatically be included in the class…"). Generally, class certification of FLSA claims via 29 U.S.C. §216(b) and state law claims separately via Fed. R. Civ. P. 23 certification is proper, and both can co-exist. See, again *Ervin* at 977 ("[n]othing we find suggests that the FLSA is not amenable to state-law claims for related relief in the same federal proceeding."). Relatedly, Courts routinely exercise supplemental jurisdiction over state wage law class claims in FLSA collective action matters. See again *Ervin* at 979 .("…the requirements of section 1367(a) are satisfied in cases like this one, where state-law labor claims are closely related to an FLSA collective action.").

The Court in *Ervin* also addressed other concerns likely to be argued by Bosman, such as that putative class members will be confused given the opt-in nature of FLSA collective actions and the

opt-out format of Rule 23 class actions. However, as the 7th Circuit has held "[i]t does not seem like too much to require potential participants to make two binary choices: (1) decide whether to opt in and participate in the federal action; (2) decide whether to opt out and *not* participate in the state-law claims. Other courts in this circuit appear to have had little trouble working out an adequate notice in this type of case." *Ervin* at 978. Also, since the FLSA opt-in periods of both Notice periods authorized by this Court have ended, there will be no such confusion for those that either affirmatively chose not to opt-in to or did not receive notice of the FLSA action. Ultimately, it is settled law in this District and Circuit that "there is no categorical rule against certifying a Rule 23(b)(3) state-law class action in a proceeding that also includes a collective action brought under the FLSA" and that "hybrid" or "combined" collective and class actions are proper. *Id*. at 973-974.

The existence of combined collective and class action matters is common practice across the federal circuits, and Plaintiffs' request here to certify their IMWL and CMWO class claims is consistent with this concept. While certification of these federal and state law claims through both §216(b) and Rule 23 are sometimes brought at the same time through a "hybrid" or "combined" motion, the same is not required and it is equally proper for Plaintiffs to move for collective action certification and class action certification separately.

The matter of *Damassia, et al. v. Duane Reade, Inc., et al* before the United States District Court of the Southern District of New York dealt with an almost identical situation as here. 250 F.R.D. 152, 154 (S.D.N.Y. 2008). Plaintiffs in related suits (*Damassia v. Duane Reade, Inc.* and *Chowdhury v. Duane Reade, Inc.*) were assistant managers at Duane Reade drug stores. Plaintiffs did not receive overtime wages, which Duane Reade conceded (as Bosman concedes as to shuttle Drivers in this case). *Id*.; See also Stipulations at ¶44, Defendants' Answer, Dkt. 8, ¶¶5e-f, 6e-f, 7e-f. Duane Reade argued overtime was not required due to an exemption to the overtime provisions of the FLSA (as Bosman does here as to shuttle drivers). *Damassia* at 154; See also Defendants' Answer, Dkt. 8, pg. 15-16. In a previous ruling, the *Damassia* court granted the plaintiffs' motion to

authorize a collective action of the FLSA claims. *Id*. Because FLSA collective actions do not inherently apply to state law claims, and the related New York state law claims did not provide for collective action certification, the plaintiffs later moved the Court for class certification of state wage claims pursuant to Fed. R. Civ. P. 23. *Id*. Equally similar to this case, "the issue in dispute in [Damassia] is not whether [the employer] paid overtime, which it admits it did not, but whether [the employer's] failure to pay overtime is excused by one or more of the statutory exceptions to the requirement." *Id*.

The *Damassia* court granted the plaintiffs' request for Rule 23 class certification of their state law wage claims over myriad objections from Duane Reade as to each Rule 23 requirement, holding that "allowing a class action under these circumstances would not "'nullify Congress's intent [as to the FLSA].'") *Id*. at 162 (internal citations omitted). Duane Reade's primary arguments against class certification were that plaintiffs could not satisfy the "superiority" leg of Rule 23(b). The *Damassia* court rejected numerous arguments from Duane Reade (which Bosman can be expected to make in this case) suggesting that collective and class actions are incompatible, finding instead "there is no reason that FLSA's collective action procedure is incompatible with maintaining a state law class action over the same conduct". *Id*. Further, the *Damassia* court found that both "concern about including class members who do not really want to participate in the class" and "potential confusion to class members of receiving multiple notices" deserved "little weight" and "were not [of] significant concern[s]" *Id*. at 163.

Based on the thorough reasonings of both the 7th Circuit in *Ervin* and the Southern District of New York in *Damassia*, it is clear that FLSA collective actions and Rule 23 class actions of related federal and state (and additionally, here, municipal) wage claims can be litigated in a single proceeding and that the sequence is not of particular consequence. In sum, Plaintiffs' Motion for Class Certification of their IMWL and CMWO claims pursuant to Fed. Civ. P. 23 is proper both procedurally and substantively and should be granted.

### D. Plaintiffs Satisfy the Requirements for Class Certification under Rule 23

#### 1. Numerosity

To satisfy numerosity, the class size must be large enough such that joinder of all members is impracticable. "[W]hile there is no number requiring or barring a finding of numerosity, a class of more than forty members is generally believed to be sufficiently numerous for Rule 23 purposes." *Toney v. Rosenwood Care Ctr., Inc.*, 1999 U.S. Dist. LEXIS 4744, at *22 (N.D. Ill.1999); *see also Swanson,* 415 F.2d at 1333 n.9 (7th Cir. 1969) (forty class members establish numerosity).

Here, Plaintiffs easily establish numerosity. At present, there are a total of 20 joined Plaintiffs in this matter. As established previously through Defendants' responses to written discovery and Plaintiffs' previous distribution of Notice to shuttle drivers via 29 U.S.C. §216(b), Bosman has confirmed that they employed, at least, approximately 63 Drivers between March 2016 and October 2019, such that the proposed putative class far exceeds the typical 40 class member threshold for Rule 23 certification. See **Exhibit 2**, Defendants' Responses to Plaintiffs' Interrogatories. Bosman may have employed even more shuttle drivers since Plaintiffs issued FLSA Notices in January of 2020. There is no question that Plaintiffs satisfy Numerosity.

#### 2. Commonality

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). "[T]he cases have not been overly restrictive in setting out the requirements for commonality, with the existence of a common nucleus of operative fact usually being enough to qualify " *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992). Furthermore, it is well-established that what commonality does *not* require is "that every member of the class have an identical claim. It is enough that there be one or more common questions of law or fact." *Spano v. The Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011).

In this case, commonality is clearly demonstrated. Plaintiffs assert (and Defendants admit via

the Stipulations) that as Drivers for Bosman, they were paid only straight time wages for all hours worked in excess of 40 in individual work weeks. Commonality is also demonstrated by the near identical job duties, policies and procedures required by Bosman for all its shuttle drivers, including alleged misclassification of shuttle drivers as independent contractors and assertion of the MCA exemption.[4] As detailed, *supra*, the Parties' Stipulations confirm that substantial common questions of fact or law (in this case, both) exist as to the class. See again Stipulations, ¶¶1, 17, 18, 22, 26, 27, 38, 39, 40, 41, 42, 43, 44, 45, 46. The facts related to the job duties, pay practices and employment classifications of shuttle drivers are undisputed, irrefutable and admitted by Bosman, such that commonality is satisfied.

The sole basis of this putative class action is the allegation of the non-payment of overtime that Drivers endured during a specific time period, all as a result of the identical pay practices and policies implemented by Bosman and accordingly, commonality is undeniable.

### 3. Typicality

The issue of typicality is closely related to that of commonality. *Rosario*, 963 F.2d at 1018. To satisfy the typicality requirement of Rule 23(a)(3), the class representative's claims must arise from the same practice or course of conduct and be based on the same legal theory as the claims of class members. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Typicality is meant to ensure that the claims of the class representatives have the "same essential characteristics as the claims of the class at large." *Retired Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

Typicality, like commonality, is satisfied in this case in that Plaintiffs allege they suffered the identical nonpayment of overtime arising out of the identical policies and procedures argued herein and which serves as the premise for all Class claims as well. In this case, and for largely the same

---

[4] See Plaintiffs' Proposed Class Definition, *supra*.

14

reasons commonality is satisfied, the claims of Plaintiffs and class members arise from the same alleged conduct of Bosman and therefore, typicality is satisfied.

### 4. Adequacy of Representation

Rule 23(a)(4) requires the named class representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Hill v. Western Electric Co.,* 672 F.2d 381, 388 (4th Cir. 1982); *Murray v. Bill Me Later*, 12 C 4789 (N.D. Ill. Jul. 24, 2014).

Adequacy of representation by a plaintiff is a question of fact and the plaintiff bears the burden of proof. *See, e.g.*, *Predmore v. Allen,* 407 F. Supp. 1053, 1064 (D. Md. 1975). The adequacy inquiry looks to whether the named plaintiff has interests common with, and not antagonistic to, those of absent class members; and the plaintiff's attorney is qualified, experienced, and able to conduct the litigation. *See, e.g.*, *Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

Plaintiffs satisfy this standard as well. The Named Plaintiffs do not have antagonistic or conflicting claims with other members of the Class. This is confirmed by the Parties' Stipulations. See again Stipulations, ¶¶1, 17, 18, 22, 26, 27, 38, 39, 40, 41, 42, 43, 44, 45, 46; See also Plaintiffs' First Amended Complaint, Dkt. 6. All of the Named Plaintiffs worked for Bosman as shuttle Drivers as were all proposed Class Members and per the clear and concise proposed definition of the Class, all have experienced the nonpayment of overtime by way of Bosman's identical policies and practices related to payment of wages and worker classification.

Moreover, Plaintiffs' lead attorneys are competent and experienced in the area of class action litigation and are qualified and able to conduct this litigation. Rule 23(g) requires that courts consider the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims, (2) class counsel's experience in handling complex litigation and class actions, (3) counsel's knowledge of the applicable law, and (4) the resources that class counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g). In this case, all these requirements are met. Here, Class lead counsel, John W. Billhorn, has practiced law in the federal

courts in this and other jurisdictions since his graduation from The John Marshall Law School in 1987, and has extensive experience in litigating wage and hour cases under the FLSA and pendent Illinois and municipal statutes. It is estimated that Mr. Billhorn, a solo practitioner during the balance of his 34-year career at the bar, has litigated to successful conclusion approximately 750 wage and hour cases, recovering in settlement and at trial millions of dollars in back wages under a variety of different theories and claims. Moreover, Mr. Billhorn has competently litigated the instant case through aggressive discovery and various motion practice by both sides and has gathered ample evidence establishing the propriety of class certification. Here, the adequacy of representation requirement is clearly met.

Plaintiffs' counsel Samuel D. Engelson is likewise competent and experienced in the area of class action litigation and is qualified and able to conduct this litigation as required by Rule 23(g). Mr. Engelson also meets all these requirements. Mr. Engelson graduated from The John Marshall Law School in 2017 and began litigating wage and hour matters (including the FLSA, IMWL and CMWO) before the Northern District of Illinois in February 2018. Upon joining Billhorn Law Firm, Mr. Engelson has gained extensive experience litigating wage and hour matters and has litigated, at least, approximately 80 wage and hours cases, including numerous class action matters. Mr. Engelson has recovered via settlement hundreds of thousands of dollars in back wages and damages under a variety of different theories and claims. Mr. Engelson has competently litigated the instant case through discovery and various motion practice by both sides and has gathered ample evidence establishing the propriety of class certification. Here, the adequacy of representation requirement is clearly met.

### E. This Action Satisfies the Requirements of Rule 23(b)(3)

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of subdivision (b). Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and

efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *see also Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831, 838 (N.D. Ill. 2008) (explaining that "matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action").

For purposes of a class action, the common questions of law and fact in this proposed class clearly predominate over any individual issues. The dominant legal issue Plaintiffs move this Court to certify for class treatment is Bosman's practices pertaining to non-payment of overtime for shuttle driving work. The predominance requirement is also satisfied where a "common nucleus of operative facts," for which the law provides a remedy, exists among all class members. *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 310 (N.D. Ill. 1995).

In this case, there is an undisputed and irrefutable common nucleus of operative facts that concern the application of Bosman's pay practices and policies that include paying shuttle Drivers only straight time wages for all hours worked, including hours worked in excess of 40 in individual work weeks. This is the only basis for operative facts in this Rule 23 Class Action, as there are no individual issues. See generally, Stipulations. Dkt. 135.

Moreover, a class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments, would be achieved through the certification of the class. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992). The alternative is potentially hundreds of individual lawsuits asserting modest claims and protracted piecemeal litigation, such that a class action is the appropriate method for resolving many modest claims such as those at issue herein. *See, e.g., Warren v. Town of Speedway*, 2013 U.S. Dist. LEXIS 178273, at \*16-17 (S.D. Ill. Dec. 19, 2013). For all of these reasons, Plaintiffs have

17

satisfied the requirements of Rule 23(a) and (b), and this Court should certify the Plaintiff classes as described in Section II, *supra*.

### V. Plaintiffs' Proposed Notice for Shuttle Drivers Is Proper in Content and Form, and the Notice Adequately Describes the Nature of the Claims as Well as the Procedures That Remain in the Case, and the Notice Should be Approved by the Court.

Plaintiffs attach hereto as **Exhibit 4** a draft Notice to be mailed to the Plaintiff Class as identified by Defendants. The Notice fairly and adequately describes the nature of the claims, the reasons(s) why the recipient has been identified as a member of the Class, and the remaining tasks and procedures that will be required to reach a judicial decision on the merits of the claims.

### VI. Conclusion

In accordance with the foregoing, Plaintiffs respectfully request that this Court grant their Motion for Class Certification under Fed. R. Civ. P. 23, and enter an Order:

A. Certifying the Class as defined herein under the IMWL and CMWO in accordance with Plaintiffs' Motion and Memorandum;

B. Appointing the Named Plaintiffs herein to serve as representatives of the Class, and Plaintiffs' attorneys to serve as Class Counsel;

C. Directing Defendants to hereafter provide Class Counsel with the names, last known addresses, email addresses and phone numbers of all Class Members;

D. Granting Plaintiffs permission to send Notice of the Class Action to Class Members by mail, email and text message with the assistance of a reputable Class Administrator, as well as posting of such Notice at Bosman's (if such a workplace still exists), in an agreed upon location or locations, the Notice to be in a form as attached hereto as **Exhibit 4** or as otherwise required by the Court;

E. For such additional relief as this Court deems appropriate under the circumstances.

Respectfully submitted,

*Electronically Filed 6/06/2022*

/s/ John W. Billhorn
_____
John William Billhorn
Samuel D. Engelson

BILLHORN LAW FIRM
53 West Jackson Blvd., Suite 1137
Chicago, Illinois 60604
(312) 853-1450

*Attorneys for Plaintiff, and all other Plaintiffs similarly situated, known and unknown*