## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RENEE STINGLEY *et al.*,<br>*on behalf of themselves and all other*<br>*plaintiffs similarly situated,* | |
| Plaintiffs, | No. 18-cv-06221 |
| v. | Judge John F. Kness |
| LACI TRANSPORT INC. *et al.*, | |
| Defendants. | |

| | |
|---|---|
| MARTANEZE JOHNSON *et al.*,<br>*on behalf of themselves, and all other*<br>*plaintiffs similarly situated,* | |
| Plaintiffs, | No. 19-cv-02066 |
| v. | Judge John F. Kness |
| BOSMAN TRUCKING, INC. *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

These cases, which have been consolidated in this opinion for disposition, involve claims for unpaid overtime wages and center on a question of interstate commerce. Plaintiffs are current and former shuttle truck drivers whose work occurs entirely within Illinois and involves moving truckloads of automobile parts—which were fabricated outside of Illinois—on short trips to and from a Ford Motor Company

assembly plant in Chicago. Plaintiffs Renee Stingley and Martaneze Johnson, respectively, along with their co-Plaintiffs, allege that their employers (Laci Transport Inc. and Vladeta Markovic in *Stingley*; Bosman Trucking, Inc. and Greg Tlustochowicz in *Johnson*) failed to pay them overtime wages for the time they spent doing this work in excess of forty hours per week.

All parties now seek summary judgment. (*Stingley*, Dkts. 283, 287; *Johnson*, Dkts. 191, 196.) These motions present the same issue: whether an exemption under the Motor Carrier Act (MCA) excuses Defendants from paying overtime wages that would otherwise be required by various federal and state wage laws. Put simply, the MCA exemption applies if the intrastate routes Plaintiffs drive could reasonably be viewed as being part of a continuous interstate journey of the materials Plaintiffs are tasked with moving. If the exemption applies, Defendants are entitled to summary judgment. If it does not apply, Plaintiffs are entitled to summary judgment. As the parties agree, there is no genuine dispute as to the facts material to this analysis.

For the reasons provided below, the Court holds that the routes Plaintiffs drive, although wholly intrastate, are but the denouement of a continuous journey of auto parts manufactured outside of Illinois and destined for use in new Ford automobiles made in Chicago. As a result, the MCA exemption applies and excuses Defendants from the application of otherwise-applicable overtime laws. Defendants' motions for summary judgment (*Stingley*, Dkt. 287; *Johnson*, Dkt. 196) must therefore be granted, and Plaintiffs' motions for summary judgment (*Stingley*, Dkt. 283; *Johnson*, Dkt. 191) must be denied. Plaintiffs' motions to exclude Defendants'

expert report and testimony (*Stingley*, Dkt. 280; *Johnson*, Dkt. 188), Defendants' motions to exclude Plaintiffs' expert report and testimony (*Stingley*, Dkt. 290; *Johnson*, Dkt. 199), and Defendants' motions to strike Plaintiffs' notice of supplemental authority (*Stingley*, Dkt. 317; *Johnson*, Dkt. 221) are dismissed as moot.

## I.    BACKGROUND

Plaintiffs Renee Stingley, Earnest Smith, Jelther Sept, Lamar Trussell, Rickey Hawkins, Floyd Beatty, and Greg Kennon (the "*Stingley* Plaintiffs") filed this class action lawsuit against Defendants Laci Transport Inc. and Vladeta Markovic (the "*Stingley* Defendants") alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201–19 ("FLSA"); the Illinois Minimum Wage Law, 820 ILCS §§ 105/1–105/15 ("IMWL"); and the Chicago Minimum Wage Ordinance, Municipal Code of Chicago § 1-24-10 ("CMWO"). (*Stingley*, Dkt. 254.) Plaintiffs Martaneze Johnson, James Hannah, and Walter Cherry (the "*Johnson* Plaintiffs") (together with the *Stingley* Plaintiffs, the "Plaintiffs") filed this class action lawsuit against Defendants Bosman Trucking, Inc. and Greg Tlustochowicz (the "*Johnson* Defendants") (together with the *Stingley* Defendants, the "Defendants") alleging the same violations. (*Johnson*, Dkt. 6.)

Plaintiffs allege that Defendants misclassified them as "exempt" from the FLSA's overtime requirements and therefore failed to pay them overtime wages. (*Stingley*, Dkt. 254 at 11–17; *Johnson*, Dkt. 6 at 6–12.) Defendants contend that

Plaintiffs are covered by the Motor Carrier Act Exemption to the FLSA; thus, overtime pay was not required. (*Stingley*, Dkt. 287; *Johnson*, Dkt. 196.)

Plaintiffs are current and former shuttle truck drivers for Defendants in and around the Chicago Assembly Plant ("CAP") of the Ford Motor Company ("Ford"). (*Stingley*, Dkt. 189 ¶¶ 1, 4; *Johnson*, Dkt. 135 ¶¶ 1, 4.) Defendants operate shuttle trucks that transport semi-trailers containing new automobile parts manufactured in other states, from various Ford lots in the Chicago area. (*Stingley*, Dkt. 189 ¶¶ 3–10, 12; *Johnson*, Dkt. 135 ¶¶ 3–10, 12.) Those parts, of course, must physically be delivered to the final assembly point—in this case, the CAP. (*Stingley*, Dkt. 189 ¶¶ 4–10; *Johnson*, Dkt. 135 ¶¶ 4–10.) Many component parts used at the CAP are delivered by tractor-trailers coming into Illinois from out of state. (*Stingley*, Dkt. 189 ¶ 7; *Johnson*, Dkt. 135 ¶ 7.) Often, however, Ford is not immediately in need of the delivered parts and diverts the parts to a network of storage lots so they do not take up space at the CAP. (*Stingley*, Dkt. 189 ¶ 11–13; *Johnson*, Dkt. 135 ¶ 11–13.) Loaded trailers can be parked at the storage lots until the CAP is ready to accept delivery. (*Stingley*, Dkt. 189 ¶¶ 11–17; *Johnson*, Dkt. 135 ¶¶ 11–17.)

Once the CAP is ready to accept a trailer load of parts, CAP personnel call for delivery of the trailer from the holding lot. (*Stingley*, Dkt. 189 ¶ 17; *Johnson*, Dkt. 135 ¶ 17.) At that point, a shuttle truck driver attaches a tractor to the trailer and drives it from the storage lot to the CAP. (*Stingley*, Dkt. 189 ¶¶ 11, 21; *Johnson*, Dkt. 135 ¶¶ 11, 21.) Once the trailer is delivered to the CAP, the trailer is unloaded, and the empty racks and containers that secured the auto parts are returned to the trailer

in which they arrived. (*Stingley*, Dkt. 189 ¶ 22; *Johnson*, Dkt. 135 ¶ 22.) The shuttle truck drivers then drive the empty racks back to one of the Ford lots. (*Id.*)

It is the shuttling of these trailers and the compensation of the drivers doing this local work that forms the dispute in these cases. This is because, by law, the pay for truck drivers (or, more precisely, the availability of overtime wages) can depend upon whether the routes to which those drivers are assigned are classified as either interstate or intrastate under the Motor Carrier Act ("MCA"), 29 U.S.C. § 213(b)(1). There is no dispute that the drivers who transport trailers from out of state to the general vicinity of the CAP are subject to the MCA. (*Stingley*, Dkt. 284, at 13–17; Dkt. 288 at 5–6. *Johnson*, Dkt. 193 at 13–16; Dkt. 197 at 5–6.) Under the MCA, drivers who "could be reasonably expected to drive intrastate routes that were part of a continuous interstate journey" are "subject to the Secretary of Transportation's jurisdiction" and thus exempted from FLSA overtime provisions. *Burlaka v. Cont. Transp. Servs.*, 971 F.3d 718, 719 (7th Cir. 2020).

Where the parties diverge is whether the intrastate routes Plaintiffs drive are part of a continuous interstate journey. Plaintiffs contend that the routes they drive are not interstate, and therefore the MCA does not apply to them. (*Stingley*, Dkt. 284 at 18–20; *Johnson*, Dkt. 193, at 18–20.) Defendants disagree. (*See Stingley*, Dkt. 288; *Johnson*, Dkt. 196.) Although the parties disagree substantively on this point, they agree that whether the MCA applies is the central issue in the case. (*Stingley*, Dkt. 284 at 4; *Johnson*, Dkt. 193 at 4 (describing applicability of the MCA as the issue at summary judgment) and *Stingley*, Dkt. 288 at 2; *Johnson*, Dkt. 197 at 2 (noting that

5

Court's decision at summary judgment will turn on whether the FLSA or the MCA applies).)

For the reasons stated below, the Court agrees with Defendants that the MCA exemption precludes overtime under the FLSA, and grants summary judgment in favor of Defendants. (*Stingley*, Dkt. 287; *Johnson*, Dkt. 196.) Plaintiffs' motions for summary judgment (*Stingley*, Dkt. 283; *Johnson*, Dkt. 191) are denied.

## II.  STANDARD OF REVIEW

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 697, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted). A genuine issue of material fact exists when "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All facts and inferences drawn from the evidence must be viewed in the light "most favorable to the nonmoving part[y]." *Palmer v. Franz*, 928 F.3d 560, 563 (7th Cir. 2019) (quoting *Stokes v. Bd. of Educ.*, 599 F.3d 617, 619 (7th Cir. 2010)).

## III. DISCUSSION

### A. The MCA Exempts Defendants from Paying Overtime Wages

The Parties dispute whether Plaintiffs "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate . . . commerce within the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a)(2). Put another way, the crux of the parties' dispute is whether Plaintiffs were engaged in *interstate* activity while employed for Defendants as shuttle truck drivers. Defendants contend that, because "Plaintiff drivers transported products moving through interstate commerce for a motor carrier," they are subject to the MCA exemption. (*Stingley*, Dkt. 288 at 2; *Johnson*, Dkt. 197 at 2.) Plaintiffs argue instead that "[Defendants have] no fixed and persisting intent for any other destination at which the auto component parts will 'arrive.' When those parts are delivered to the CAP and/or the holding lots in and around the CAP campus, they have reached the shipper's ([Defendants]) final, intended destination and as such" the MCA exemption does not apply. (*Stingley*, Dkt. 300 at 2; *Johnson*, Dkt. 205 at 2.)

Plaintiffs bring claims under the FLSA, the IMWL, and the CMWO. A violation

of the CMWO and IMWL is contingent upon a violation of the FLSA. *See* 820 ILCS 105/4a(2)(E); Municipal Code of Chicago at §§ 6-105-040, -010. If Plaintiff's FLSA claims fail, therefore, their related state law claims "under the IMWL [and CMWO] must fail as well." *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 376 (7th Cir. 2005). Accordingly, the Court frames its analysis of Plaintiffs' claims under the FLSA. *See Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993); *Vann v. Dolly, Inc.*, 2019 WL 1785589, at *2 (N.D. Ill. Apr. 24, 2019) (assessing FLSA, IMWL, and CMWO claims together); *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 784 (N.D. Ill. 2011) ("The FLSA is relevant to plaintiffs' IMWL claims because the IMWL parallels the FLSA, and the same analysis generally applies to both statutes.").

The FLSA requires employers to pay covered employees overtime wages for any hours worked in excess of forty per week. *See* 29 U.S.C. § 207; *see also Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 81 (2018). But the FLSA also contains exemptions. Relevant here, the FLSA exempts employees subject to the Secretary of Transportation's jurisdiction under the Motor Carrier Act. *Burlaka*, 971 F.3d at 719 (citing 29 U.S.C. § 213(b)(1)); *see also Almy v. Kickert Sch. Bus Line, Inc.*, 722 F.3d 1069, 1071 (7th Cir. 2013) (plaintiffs were "exempt under the FLSA because the exclusive authority to set maximum hours for 'motor carriers' is vested in the Secretary of Transportation by . . . the Motor Carrier Act") (citing 49 U.S.C. § 31502(b)(1)); *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 660–61 (7th Cir. 2011) ("FLSA requires employers to pay overtime (one-and-a-half times the hourly wage) to employees who work more than forty hours a week, [but certain motor

8

carriers that engage] in interstate commerce may come under the Secretary of Transportation's jurisdiction under the Motor Carrier Act") (citing 49 U.S.C. § 31502). That said, exemptions to the FLSA "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960) (citing *Mitchell v. Ky. Fin. Co.*, 359 U.S. 290, 295 (1959)).

Motor carriers whose employees engage entirely in "intrastate commerce" are generally subject to "the Secretary of Labor's jurisdiction, and consequently to the overtime and maximum hours provisions of the FLSA." *Hix*, 651 F.3d at 660. Motor carriers whose employees engage in interstate commerce, however, may come under the Secretary of Transportation's jurisdiction under the Motor Carrier Act. *Id.* at 660–61; 49 U.S.C. § 31502; 29 U.S.C. § 213(b)(1). And the "scope of an interstate commerce run under the MCA is generous. It includes a purely intrastate run so long as it is a part of a continuous interstate journey." *Burlaka*, 971 F.3d at 720.

Under the MCA, FLSA overtime is unavailable for "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [49 U.S.C. §] 31502." 29 U.S.C. § 213(b)(1). Section 31502, in turn, empowers the Secretary of Transportation to prescribe "qualifications and maximum hours of service" for employees of "motor carrier[s]" and "motor private carrier[s]." 49 U.S.C. § 31502(b). Whether the MCA exemption applies "depends both on the class to which [the] employer belongs and on

9

the class of work involved in the employee's job." 29 C.F.R. § 782.2(a). As the Seventh Circuit has explained, the MCA exemption "depends upon the activities of the individual employees." *Goldberg v. Faber Indus., Inc.*, 291 F.2d 232, 235 (7th Cir. 1961).

Drivers need not "actually drive in interstate commerce to fall within the Secretary's jurisdiction." *Burlaka*, 971 F.3d at 719. Rather, the MCA exemption applies so long as "the goods are being transported on an interstate journey." *Edwards v. Aramark Unif. & Career Apparel, LLC*, 2016 WL 236241, at *7 (N.D. Ill. Jan. 19, 2016) (quotation marks and citations omitted). As such, even though employees may have worked entirely in one state, the interstate commerce requirement still may be satisfied if the goods are transported within the borders of that state as part of a "practical continuity of movement" in the flow of interstate commerce. *Walling v. Jacksonsville Paper Co.*, 317 U.S. 564, 568 (1943). When considering whether the goods are part of a practical continuity in the flow of interstate commerce, the critical factor is the "original and persisting intention of the shippers." *Baltimore & O.S.W.R. Co. v. Settle*, 260 U.S. 166, 174 (1922); *see also Jones v. Centurion Inv. Assocs., Inc.*, 268 F. Supp. 2d 1004, 1012 (N.D. Ill. 2003) ("[C]rucial to a determination of the essential character of a shipment is the shipper's fixed and persisting intent at the time of shipment" (quotation marks and citations omitted)). If the fixed and persisting intent of the shipper was to "transport [its] products across state lines . . . to customers in the destination state" with minimal interruptions and no alteration of the products, that "entire journey should be regarded as having taken

place in interstate commerce within the meaning" of the MCA exemption. *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 898 (7th Cir. 2009).

In *Collins*, the Seventh Circuit outlined four criteria that courts may consider when determining whether a shipper's fixed and persisting intent is for the products to be transported in interstate commerce:

> (1) the shipper, although it doesn't have to have lined up its ultimate customers when the product arrives at the warehouse, bases its determination of the total volume to be shipped through the warehouse on projections of customer demand that have some factual basis;
>
> (2) no processing or substantial product modification of substance occurs at the warehouse;
>
> (3) while in the warehouse, the merchandise is subject to the shipper's control and direction as to the subsequent transportation; and
>
> (4) the shipper or consignee must bear the ultimate payment for transportation charges even if the warehouse or distribution center directly pays the transportation charges to the carrier (this goes to the shipper's responsibility for the original interstate journey).

*Collins*, 589 F.3d at 899–900 (internal quotation marks omitted). If these conditions are satisfied, the shipper's fixed and persisting intent of its products is interstate travel; thus, "the intrastate leg at the end of the shipment should be deemed part of an interstate shipment." *Id.* at 900.

Plaintiffs contend that the interstate journey of the parts ends when a given shipment reaches the CAP for inspection and inventory before being sent to the staging lots for storage. (*Stingley*, Dkt. 284 at 14; *Johnson*, Dkt. 193 at 13.) This short journey from the CAP to the staging lots and back to the CAP—a completely intrastate journey—is not the "final leg" of an interstate journey under the MCA,

11

according to Plaintiffs. (*Stingley*, Dkt. 284 at 14; *Johnson*, Dkt. 193 at 14.) Plaintiffs argue that the interstate journey is complete at the first CAP stop because Defendant has "no fixed and persisting intent . . . for further downstream shipping or sales. The goods have come to rest with the final, end of the line user." (*Stingley*, Dkt. 284 at 15; *Johnson*, Dkt. 193 at 14.) Plaintiffs insist that the next destination of the parts to staging areas is not "a convenient intermediate step in the process of getting the goods to their final destinations," *Burlaka*, 971 F.3d at 719, but is "merely [a] temporary storage area[] for goods that have already come to rest at their final destination." (*Singley*, Dkt. 284 at 17; *Johnson*, Dkt. 193 at 17.) Citing *Collins*, Plaintiffs maintain that the "practical continuity of the movement" of the goods across state lines terminates when the parts first arrive at the CAP, and any further movement of the goods is an independent intrastate journey not governed by the MCA. (*Stingley*, Dkt. 284 at 19; *Johnson*, Dkt. 193 at 19.)

Defendants disagree and instead argue that "Ford's fixed and persisting intent is still for their parts to go from out-of-state manufacturers all the way to the CAP." (*Stingley*, Dkt. 288 at 8; *Johnson*, Dkt. 197 at 8.) In Defendants' view, the "few days the trailers spend at the drop lot does not terminate the interstate journey." (*Stingley*, Dkt. 288 at 12; *Johnson*, Dkt. 197 at 12.)

To resolve this dispute, the Court must apply the *Collins* factors to determine Ford's "fixed and persisting intent" for the parts. At the outset, though, the question of Ford's intent cannot be resolved at the summary judgment stage if disputed material facts exist. But the record developed in this case reflects that the facts

material to the *Collins* analysis are not disputed.

As to the first *Collins* factor, which asks whether the volume of products shipped depends on projections of customer demand, Plaintiffs do not dispute Defendants' assertions that Ford orders auto parts from outside of Illinois specifically for use at the CAP based upon Ford's projections, forecasts, and estimated need for those specific parts at the CAP. (*Stingley*, Dkt 189 ¶¶ 7–11; *Johnson*, Dkt. 135 ¶¶ 7–11.) As to the second factor, which requires that no processing or modification of the products occur, Plaintiffs do not dispute that the trailers are not opened at the drop lots, nor are their contents comingled, assembled, or processed at the drop lots. (*Stingley*, Dkt. 189 ¶¶ 15, 22, 30; Dkt. 301 ¶ 42. *Johnson*, Dkt. 135 ¶¶ 15, 22, 30; Dkt. 206 ¶ 42.) Indeed, it is undisputed that Ford ships the auto parts in trailers to drop lots with the intention that those auto parts reach the CAP within two or three days without further manufacturing or processing at the drop lots. (*Stingley*, Dkt. 189 ¶¶ 11–16; *Johnson*, Dkt. 135 ¶¶ 11–16.) *Collins*'s third factor, which asks whether the products are subject to the shipper's control as to their subsequent transportation, Plaintiffs do not dispute that Ford owns or leases the drop lots. Ford tracks each trailer going into and out of the lots and controls the trailers at the drop lots. (*Stingley*, Dkt. 189 ¶¶ 14, 26, 28–29; Dkt. 284 at 10–11. *Johnson*, Dkt. 135 ¶¶ 14, 26, 28–29; Dkt. 193 at 9–10.) Finally, as to the fourth factor, which asks whether the shipper bears ultimate payment for transportation costs, Plaintiffs do not dispute that Ford bears the ultimate cost for transportation charges. (*Stingley*, Dkt. 301 ¶ 41; *Johnson*, Dkt. 206 ¶ 41.)

As the foregoing recitation reflects, there is no dispute over the facts relevant to the *Collins* analysis. Nor is there any dispute that Ford's intent, at least for the majority of the trip, is for the parts to be transported in interstate commerce to their initial stop at the CAP. What is disputed by Plaintiffs is whether those facts show that the intrastate shuttling of the parts after they are first delivered to the CAP remains part of that interstate journey. In this Court's view, the *Collins* factors remain relevant to this inquiry and compel a finding that the parts remain in interstate commerce until they come finally to rest at the CAP.

*Collins*, which presented substantially similar facts as here, is instructive—if not outright dispositive of Plaintiffs' position. In *Collins*, the plaintiffs were truck drivers hired by the defendant employer to transport wine that was produced out-of-state from warehouses located in Illinois to retail stores also located in Illinois. *Collins*, 589 F.3d at 896. At issue in *Collins* was whether the transportation of the wine from Illinois warehouses to Illinois retail stores, an entirely intrastate trip, was "nevertheless interstate commerce within the meaning of the [MCA]." *Id.* at 896–97. After noting that the defendant controlled and directed the movement of the wine "on the entire journey from the state or country of origin of the wine to the retail stores in Illinois to which the plaintiffs transport the wine from the warehouse," the Court of Appeals defined and applied four relevant factors. *Id.* at 896–98. As *Collins* explained, because (1) the defendant determined its shipment volume based on projections of customer demand; (2) no processing or modification happened at the warehouses; (3) the products were entirely subject to the defendant's control; and

(4) the defendant bore ultimate payment for transportation, the intrastate shipments took place in interstate commerce. *Id.* at 896–98. As the Seventh Circuit concluded, because "interruptions in the [interstate] journey that occur in the destination state are no more than the normal stops or stages that are common in interstate sales, such as temporary warehousing, the entire journey should be regarded as having taken place in interstate commerce" within the meaning of the MCA. *Id.* at 898.

Similar to the defendant in *Collins*, Ford controls, directs, and manages all aspects of the transportation of the parts—from their point of origin outside of Illinois, to their initial delivery to the CAP, and to their intrastate journey to staging lots until they come to a final resting point back at the CAP. There is no dispute that Ford orders the parts, directs the shipment of the parts to the CAP, directs the parts to staging lots, and orders them back to the CAP when they are needed. (*Stingley*, Dkt. 189 ¶¶ 9–16; *Johnson*, Dkt. 135 ¶¶ 9–16.) There is no dispute that Ford continues to track the parts during the time when they are stored at the staging lots, and the parts are not finally processed or handled until they reach the CAP for the second time. (*Stingley*, Dkt. 189 ¶¶ 14–15; *Johnson*, Dkt. 135 ¶¶ 14–15.) It follows from these undisputed facts that Ford's "fixed and persisting intent" is that the interstate transportation of the parts continues through the intrastate transportation of the parts from the CAP to the staging lots and back to the CAP. That this journey takes a short pause at the staging lots does not mean that the parts end their interstate journey at that time. On the contrary, the "intrastate leg at the end of the shipment" is properly viewed as being part of the entire interstate journey. *See*

*Collins*, 589 F.3d at 900.

With due respect to Plaintiffs' position, this analysis shows that the important work Plaintiffs perform involves moving items that are on one continuous interstate journey. Stated differently, the point at which the parts Plaintiffs shuttle have "come to rest" and "ceased to be 'in practical continuity with a larger interstate journey'" is not when they make their first stop at the CAP, but rather when they have been finally delivered to the CAP for installation in new automobiles. *Collins*, 589 F.3d at 900 (quoting *Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 258 (3d Cir. 2005)). As a result, Plaintiffs are, in view of this nexus to interstate commerce, "subject to the Secretary of Transportation's jurisdiction" and thus exempted from FLSA overtime provisions. *Burlaka v. Cont. Transp. Servs.*, 971 F.3d 718, 719 (7th Cir. 2020). Plaintiffs' claim for overtime wages under the FLSA fails, therefore, and Defendants are entitled to summary judgment in their favor.

## IV.   CONCLUSION

Defendants' motions for summary judgment (*Stingley* Dkt. 287; *Johnson* Dkt. 196) are granted, and Plaintiffs' motions for summary judgment (*Stingley* Dkt. 283; *Johnson* Dkt. 191) are denied.

SO ORDERED in No. 18-cv-06221 and No. 19-cv-02066.

Date: March 29, 2024

JOHN F. KNESS
United States District Judge